UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

| | |
|---|---|
| THOMAS R. BUTTON, | ) |
|               Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BANK OF AMERICA, N.A., | ) |
|               Defendant. | ) |

## COMPLAINT

### INTRODUCTION

This is an action brought by the Plaintiff, Thomas R. Button, against the Defendant, Bank of America, N.A. alleging breach of contract, violations of the Federal Truth in Lending Act, 15 USC §1601 et seq., the Massachusetts Truth in Lending Statute, M.G.L. c. 140D et seq., the Federal Fair Credit Reporting Act 15 USC §§1681-1681x, the Massachusetts Credit Reporting laws M.G.L. c. 93 §§50-68, and M.G.L. c. 93A §9.

### JURISDICTION

Jurisdiction is conferred upon this Court pursuant to 28 USC §1331, because this action concerns Acts of Congress and 28 USC §1332, based on diversity of citizenship and a claim in excess of $75,000.00.

### VENUE

Venue is proper in this Court under 28 USC §1391(b)(2) because a substantial part of the errors or omissions giving rise to this claim occurred within this judicial district.

## THE PARTIES

1. The Plaintiff, Thomas R. Button ("Button"), is a resident of 3074 Main Street, Bondsville, Massachusetts, 01009.

2. The Defendant, Bank of America, N.A. ("Bank of America"), is a national bank with a principal place of business in Charlotte, North Carolina, and which either directly and/or indirectly through its agents, employees and/or related companies serviced or engaged in transactions related to the mortgages of real property through its branch office located in Sturbridge, Worcester County, Massachusetts, and which specifically served as the branch which dealt with all transactions referred to in this complaint.

## FACTUAL ALLEGATIONS

3. On March 4, 2006, Button and his then wife, Jeanne M. Button ("Jeanne") executed a promissory note and mortgage with Bank of America at its branch office in Sturbridge, Massachusetts to secure a home equity loan for real estate which they owned as tenants by the entirety at 140 Paradise Lane, Sturbridge, Worcester County, Massachusetts ("the property").  A copy of said mortgage is attached and marked "A".

4. On or about August 28, 2009, Button, in accordance with a separation agreement which he and Jeanne filed in a Worcester County Probate Court pursuant to their divorce, conveyed his interest in the real property which was the subject of the promissory note and mortgage to Jeanne for One-Hundred Dollars ($100.00), with the understanding and agreement between Button and Jeanne that following the divorce, Jeanne would be solely responsible for paying the principal and interest on the note and mortgage of March 4, 2006, and that she would refinance the property within 5 years of the date of their divorce.

5. Shortly after he transferred his interest in the real property to Jeanne, Button relocated first, to Schenectady, New York and then, to Virginia where, as a retired New York State Police Officer, pursued positions in security at various institutions including Georgetown University in Washington, D.C.

6. Although Button had relocated his residence, he continued to provide child support to his former wife Jeanne and opened an account with Bank of America in 2011 while residing in Virginia. Since his divorce and the conveyance of the real estate which was the subject of the 2006 mortgage, Button made no further payments toward the principal and interest of the original mortgage, nor did he receive any statements from Bank of America after opening the account in 2011 with Bank of America that the mortgage account had been assigned to him.

7. In or about 2011, Jeanne made a lump sum payment to Bank of America for a number of outstanding mortgage payments on the original mortgage loan from Bank of America.

8. A dispute between Bank of America and Jeanne arose as to whether or not the payments she had made would be applied retroactively or prospectively.

9. While Jeanne argued that the payments should be credited prospectively, Bank of America claimed that the payments should be applied to past due amounts.

10. At no time had Button participated in, or was he aware of the dispute between Jeanne and Bank of America regarding any past due payments.

11. On September 23, 2012, in order to resolve the payment dispute with Bank of America, Jeanne unilaterally entered into a home equity modification agreement ("modification agreement") of the home equity loan originally granted to her and Button in 2006. A copy of said modification is attached and marked "B".

12. At no time did Button agree to participate in the home equity modification agreement; in fact, he had specifically advised Jeanne that he would not participate in any loan modification.

13. Nonetheless, Jeanne executed the home equity modification agreement which provided for additional and different interest rates, financing charges, and an increased balance due, all of which were not disclosed to Button by Bank of America at the time Jeanne entered into that agreement and 2012.

14. In accordance with the waiver and miscellaneous provisions of the original mortgage, the following is provided for with regard to amendments to that mortgage:

    "**Amendments.** What is written in this mortgage and in the related documents is grantor's entire agreement with lender concerning the matters covered by this mortgage. To be effective, any change or amendment to this mortgage must be in writing and be signed by whoever will be bound or obligated by the amendment." "A" page 10.

15. At no time did Bank of America advise Button of the consequences to him as a result of Jeanne's executing the modification agreement or that he would continue to be bound by the terms of the original mortgage despite the fact that he was not a signatory to the modification agreement.

16. Furthermore, at no time did Bank of America advise Button of any changes in the amount financed, the interest rate, or the monthly payments, despite the fact that, it knew or should have known, that Button and Jeanne had divorced, Jean specifically told an employee of Bank of America that Button would not enter into any loan modification agreement before she entered into the Agreement of September 23, 2012, and that Button at no time ever entered into any loan modification agreement, and that he had relocated his residence from Massachusetts.

17. Button was not made aware of the terms of the modification agreement or the changes in the financing of the original mortgage until he received a copy of a statement from Bank of America dated November 7, 2016, a copy of which is attached and marked "C".

18. In early 2017, Jeanne applied for and secured a second loan modification agreement with Bank of America, which once again changed the interest and accrual balance due without the Bank of America or Jeanne advising Button of those facts.

19. On or about October 23, 2017, Button received a copy of a loan summary, which indicated the balance I of the loan to Bank of America was $264,274.19. At no time prior to the receipt of this document was Button made aware of any outstanding balance owed to Bank of America. A copy of the loan summary is attached and marked "D".

20. On May 8, 2018, counsel for Button sent by certified mail a letter to Bank of America pursuant to MGL c 93Aa asserting claims for breach of contract, violation of M. G. L.

21. 1 40 D section 12 (2) (A), M. G. L. c. 93, section and 64, and M.G.L. c 90 3A. A copy of said letter is attached hereto and marked "D."

22. On August June 11, 2018 counsel for Bank of America responded by correspondence to counsel for Button denying button's claims and making no settlement offer. "F."

23. As of the date of this complaint no response has been forthcoming to counsel for Button's letter of August 30, 2018.

24. A result of Bank of America's conduct as herein described, Button's excellent credit rating was seriously impacted causing him financial hardship by preventing him from acquiring businesses, purchasing homes, and caused him to suffer economic damages in excess of Four-Hundred Thousand ($400,00.00) Dollars.

## COUNT I
### Declaratory Relief

25. Plaintiff Button realleges and incorporates by reference the facts set forth in paragraph 1 through 24 of his complaint.

26. On March 4, 2006 Button and his then wife Jeanne entered into a mortgage with Bank of America as part of a home equity loan they received which provided in part that "to be affective, any change or amendment to this mortgage must be in writing and signed by whoever will be bound or obligated by the amendment." Exhibit A page 10.

27. On 2 occasions thereafter, the first one being on September 23, 2012, Exhibit B, Jeanne unilaterally negotiated and executed home equity modification agreements without Button's approval or agreement.

28. Without being informed by either Jeanne or Bank of America at the time and for a number of years thereafter, Button was unaware that the first home equity modification agreement changed the financial terms and conditions of the original promissory note which was secured by the mortgage which he signed on March 4, 2006.

29. As a result of the unilateral execution of the home equity modification agreements by Jeanne and based on the terms set forth in the original mortgage, she and she alone should be solely responsible for payments.

30. At that time she executed the modification agreements, both Jeanne and Bank of America understood and agreed that Button would not be participating with Jeanne in executing either of those agreements. .

31. As a result of the home modification agreement entered into by Jeanne in September of 2012 and, based upon the terms and conditions of the original mortgage which the home equity modification agreement changed, "to be affective, any change or amendment to

6

this mortgage must be in writing and signed by whoever will be bound or obligated by the amendment."

32. By accepting and acknowledging Jeanne as the sole signatory to the home modification agreement of September 23, 2012, Bank of America and Jeanne modified the terms of the original mortgage of March 4, 2006, thereby no longer obligating Button under the terms and conditions of the original mortgage as Jeanne became individually bound to pay the obligations which the home equity modification agreement had amended.

33. Despite the fact that the home equity modification agreement legally changed Button's obligation to Bank of America in accordance with the 2006 mortgage, Bank of America continued to name Button as an obligor under the original mortgage and reported Jeanne's future delinquency payments to the credit bureaus naming Button as an obligor which seriously damaged his otherwise high credit rating.

34. An actual controversy exists between Button and Bank of America with respect to Button's obligations to Bank of America after Jeanne's unilateral execution of the home equity modification agreements and the actions of Bank of America and reporting Button as being delinquent in payments to the bank to the credit reporting agencies.

Wherefore Button prays that this court enter judgment declaring:

a. That as of September 23, 2012, Button was no longer obligated under the terms and condition of the March 4, 2006, mortgage as a result of Jeanne's execution of the home equity modification agreement;

b. That the court declare that the actions of Bank of America in reporting Button as being delinquent in the mortgage payments after the execution of the home equity modification agreement by Jeanne were improper;

    c. That the court award Button damages and costs; and

    d. Any other such relief that this Court deems meet and proper.

## COUNT II
## BREACH OF CONTRACT

35. Plaintiff Button realleges and incorporates by reference the facts set forth in paragraph 1 through 34 of his complaint.

36. On March 4, 2006, Button entered into a mortgage with the Bank of America in which it was agreed, pursuant to the contractual terms contained therein, that for any amendment to the mortgage "…to be affective, any change or amendment to this mortgage must be in writing and be signed by whoever will be bound or obligated by the amendment". Ex "A" page 10.

37. Bank of America breached the terms and conditions of that agreement by claim that button was obligated under the terms of the mortgage after it had been modified in writing and signed by Bank of America and Jeanne as the sole obligor.

38. As a result of the conduct on behalf of Bank of America, it breached its agreement with Button dated March 4, 2006.

WHEREFORE, the Plaintiff Button demands judgement against the Defendant Bank of America for damages, costs and such other relief as this Court deems just and proper.

## COUNT III
### Violation of Federal Truth in Lending Act 15 USC §1601 et seq., Massachusetts Truth and Lending Statute M.G.L.A. c. 140D et seq

39. Button realleges and incorporates by reference the facts set forth in paragraph 1 through 38 of his complaint.

40. In accordance with 15 USC §1601 et seq. and M.G.L. c. 140D §12(a)(2)(A), Bank of America had an obligation to disclose the amount to be financed in the home equity modification agreements for which it claims that Button was obligated.

41. At no time did Bank of America disclose to Button the terms and conditions of the financial changes that were made to the original mortgage as a result of the home equity modification agreements signed by Jeanne.

42. As a result thereof, Bank of America is in violation of 15 USC §1601 et seq. and M.G.L. c. 140D §12(a) (2) (A).

WHEREFORE, the Plaintiff Button demands judgement against the Defendant Bank of America for damages, costs and such other relief as this Court deems just and proper.

## COUNT IV
### Violation of the Federal Fair Credit Report Act 15 §§1681-1681x and Massachusetts Fair Credit Reporting Laws M.G.L. c. 93 §§50-68

43. Button realleges and incorporates by reference the facts set forth in paragraph 1 through 42 of his complaint.

44. In accordance with the Fair Credit Report Act 15 USC §1681e(b) and M.G.L. c. 93 §64, Bank of America had an obligation as a provider of credit information to report accurately any credit information related to Button.

45. Bank of America violated 16 USC 1681(e)(b) and M.G.L. c. 93 §64 by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the report relating to Button and by negligently providing false information to credit reporting agencies about Button based on Jeanne's failure to make payments to

Bank of America in accordance with the home equity modification agreements which she alone signed.

46. On or about October 10, 2018 button first became aware that Bank of America was listing the original loan which Jeanne has subsequently modified, on his bank statement with the note on said statement that Button had received "… a discharge of this debt in a bankruptcy case." A copy of said bank statement is attached and marked "E".

47. At no time has Button been a party to any bankruptcy proceeding with Jeanne or anyone else.

48. In addition, Bank of America continues to report the original mortgage as an obligation of Button to the credit reporting agencies despite the fact that it was unilaterally modified by Jeanne. A copy of his Equifax credit report is attached and marked "F".

49. As a result of Bank of America's negligence and failure to report accurate information to the credit reporting agencies, Button's credit rating was severely damaged and he has been prevented him from borrowing funds to purchase a business or real property.

WHEREFORE, the Plaintiff Button demands judgement against the Defendant Bank of America for damages, costs and such other relief as this Court deems just and proper.

## COUNT V
**Violation of M.G.L. c 93A §9**

50. Button realleges and incorporates by reference the facts set forth in paragraph 1 through 45 of his complaint.

51. On May 8, 2018, counsel for Button sent to Bank of America's offices in Charlotte, North Carolina, by certified mail, a demand letter pursuant to M.G.L. c. 93A, a copy of which is attached and marked "G".

52. On or about June 11, 2018, counsel for Bank of America responded to the letter of May 8, 2018 denying the claim and making no offer of settlement. A copy of the letter is attached and marked "H".

53. On August 30, 2018, counsel for Button sent by certified mail a supplemental claim letter pursuant to M.G.L. c. 93A responding to Bank of America's counsel's correspondence of June 11, 2018 further detailing Button's damages and again seeking relief. A copy of that correspondence is attached and marked "I". As of the date of this complaint, no further response has been received from Bank of America.

54. The conduct of Bank of America as set forth as well as the violations of 15 USC §§1681-1681x et seq., M.G.L. c. 140D §12(a) (2) (A), 15 USC § 1601 et seq., and M.G.L. c. 93 §64 are violations of M.G.L. c. 93, as provided in M.G.L. c. 140D §34 and M.G.L. c. 93 §54A.

WHEREFORE, the Plaintiff Button prays for the following relief:

a. That this Court award actual damages against the Defendant, Bank of America, plus interest and costs, and attorney's fees; and

b. Award any such other relief as this Court deems meet and just.

**THE PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL COUNTS.**

                                               The Plaintiff,
                                               THOMAS R. BUTTON
                                               By his attorney,

                                               __/s/ James D. O'Brien, Jr._____
                                               James D. O'Brien, Jr., BBO #375755
                                               MOUNTAIN, DEARBORN & WHITING LLP
                                               370 Main Street
                                               Worcester, MA  01608
Dated:  November 9, 2018           (508) 756-2423