"A"



Bk: 38585 Pg: 379  Doc: MTG
Page: 1 of 14  03/20/2006 12:22 PM

**WHEN RECORDED MAIL TO:**
Bank of America Consumer Collateral
Tracking
FL9-700-04-10
9000 Southside Blvd, Bldg 700
Jacksonville, FL 32256

**FOR RECORDER'S USE ONLY**

## MORTGAGE

**THIS MORTGAGE** dated March 4, 2006, is made and executed between JEANNE M BUTTON AND THOMAS R BUTTON (referred to below as "Grantor") and Bank of America, N.A., whose address is 100 North Tryon Street, Charlotte, NC 28255 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants to Lender with **MORTGAGE COVENANTS** all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in WORCESTER County, Commonwealth of Massachusetts:

   See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 140 PARADISE LANE, FISKDALE, MA 01518-0000.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

   **Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

   **Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs,

14

M

**MORTGAGE**
**(Continued)**

Loan No: 7023139319

Page 2

replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. In addition, Grantor represents and warrants that Grantor's Property do not contain urea formaldehyde foam insulation or urea formaldehyde resin in violation of any Massachusetts state laws. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**MORTGAGE**
**(Continued)**

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Massachusetts law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an

# MORTGAGE
## (Continued)

endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor

## MORTGAGE
### (Continued)

has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of

the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.**  If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.**  The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.**  This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.**  Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property.  In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property.  Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.**  The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.**  The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.**  At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve  (1)   Grantor's obligations under the Note, this Mortgage, and the Related Documents, and  (2)   the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor.  Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.**  If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense.  For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.**  If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.  Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Mortgage if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Mortgage or in any agreement related to this Mortgage.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Statutory Condition.** Breach of the Statutory Condition.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as

## MORGTAGE
## (Continued)

soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** This Mortgage is upon the **STATUTORY CONDITION** for any breach of which Lender, the mortgagee, shall have the **STATUTORY POWER OF SALE.** In addition, upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Foreclosure.** Lender may invoke the **STATUTORY POWER OF SALE,** in which case Lender shall mail a copy of a notice of sale to Grantor and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the

time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**NONTITLED SPOUSES AND NON-BORROWER GRANTORS.** Any Grantor or Trustor who signs this Deed of Trust, Mortgage or Modification ("Security Instrument") but does not execute the Note or Credit Agreement ("Non-borrower Grantor or Trustor"): (a) is signing only to grant, bargain, sell and convey such Non-borrower Grantor's or Trustor's interest in the Property under the terms of this Security Instrument; (b) is not by signing becoming personally obligated to pay the Note or Credit Agreement; and (c) agrees that without such Non-borrower Grantor's or Trustor's consent, Lender and any other Grantor or Trustor may agree to renew, extend, modify, forbear or make any accommodations with regard to the terms of all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the obligation evidenced by the Note or the Credit Agreement ("Related Document").

Any spouse of a Grantor or Trustor who is not in title to the Property and who signs this Security Instrument: (a) is signing only to grant, bargain, sell and convey any marital and homestead rights of such spouse in the Property; (b) is not by signing becoming personally obligated to pay the Note or Credit Agreement; and (c) agrees that without such spouse's consent, Lender and any other Grantor or Trustor may agree to renew, extend, modify, forbear or make any accommodations with regard to the terms of any Related Document.

Neither of the two foregoing sentences limit the liability of any Non-borrower Grantor or Trustor or signing spouse of a Grantor or Trustor, as applicable, under any guaranty agreement or other agreement by such

**MORTGAGE**
**(Continued)**

person, whereby such person becomes liable for the Indebtedness in whole or in part; both such sentences apply notwithstanding any language to the contrary in this Security Instrument or any of the Related Documents and apply only to the extent permitted by applicable law.

**WAIVERS AND MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Mortgage:

**Amendments.**  What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage.  To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.**  Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.  With respect to interest (as defined by federal law) this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of laws provisions.  In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Massachusetts without regard to its conflicts of law provisions. The loan transaction that is evidenced by the Note and this Mortgage has been approved, made, and funded, and all necessary loan documents have been accepted by Lender in the State of North Carolina.**

**Joint and Several Liability.**  All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor.  This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.**  Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing.  The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right.  If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage.  Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again.  Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests.  Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.**  If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced.  Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.**  There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Release of Estate of Homestead.**  Grantor hereby releases any estate of homestead as to all Indebtedness secured by this Mortgage.

**Successors and Assigns.**  Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.**  Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.**  The following words shall have the following meanings when used in this Mortgage:

**MORTGAGE**
**(Continued)**

**Borrower.** The word "Borrower" means JEANNE M BUTTON and THOMAS R BUTTON and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means JEANNE M BUTTON and THOMAS R BUTTON.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Bank of America, N.A., its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated March 4, 2006, **in the original principal amount of $210,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is March 23, 2031.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

MORTGAGE
(Continued)

Loan No: 7023139319

Page 12

Real Property.  The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

Related Documents.  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents.  The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.**

**THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**GRANTOR:**

X _____ (Seal)
   JEANNE M BUTTON

X _____ (Seal)
   THOMAS R BUTTON

Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness

Loan No: 7023139319

**MORTGAGE**
**(Continued)**

Page 13

---

### INDIVIDUAL ACKNOWLEDGMENT

**COMMONWEALTH OF MASSACHUSETTS** )

)  SS

**COUNTY OF** WORCESTER )

On this _4TH_ day of _MARCH_ , 20 _06_ , before me, the undersigned notary public, personally appeared **JEANNE M BUTTON** and **THOMAS R BUTTON**, proved to me through satisfactory evidence of identification, which were _MA DRIVERS LICENSES_ , to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily for its stated purpose.

_____
Notary/Public

My commission expires

SUZANNE ELIZABETH TUTTLE
Notary Public
Commonwealth of Massachusetts
My Commission Expires
May 12, 2011

LASER PRO Lending, Ver. 5.29.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - MA/MC C:\CFI\CFPL\PL\G03.FC TR-43340663 PR-AR2040KT

xxx

## LEGAL DESCRIPTION
### (Exhibit A)

06NL06633

THE LAND IN STURBRIDGE, WORCESTER COUNTY,
MASSACHUSETTS SHOWN AS LOT #36 ON A PLAN OF LAND
ENTITLED "PLAN OF LOTS IN STURBRIDGE,
MASSACHUSETTS SURVEYED FOR J & J REALTY, JUNE 6,
1996, PARA LAND SURVEYING, INCORPORATED,
SOUTHBRIDGE, MASSACHUSETTS, SCALE 1" = 40', SAID
PLAN BEING RECORDED WITH WORCESTER DISTRICT
REGISTRY OF DEED AT PLAN BOOK 705, PLAN 73, SAID
LAND BEING MORE PARTICULARLY BOUNDED AND
DESCRIBED AS FOLLOWS: BEGINNING AT THE
NORTHWEST CORNER OF LAND HEREIN DESCRIBED, AT A
POINT ON THE EASTERLY SIDE OF PARADISE LANE AS
SHOWN ON SAID PLAN; THENCE S. 69° 03' 41" E. ALONG
LAND NOW OR FORMERLY OF J & J REALTY AND NATHAN
SOUTHWICK, A DISTANCE OF 440.14 FEET; THENCE S. 10°
47' 29" E. ALONG LAND NOW OR FORMERLY OF
STURBROOK REALTY TRUST, A DISTANCE OF 244.50 FEET;
THENCE S. 60° 01' 26" W., ALONG LAND NOW OR
FORMERLY OF G. M. N. INC., A DISTANCE OF 150 FEET;
THENCE N. 47° 00' 19" W. ALONG LOT 35 AS SHOWN ON
SAID PLAN, A DISTANCE OF 212.03 FEET; THENCE N. 51° 09'
08" W. ALONG SAID LOT 35 A DISTANCE OF 249.10 FEET TO
A POINT ON THE EASTERLY SIDE OF PARADISE LANE AS
SHOWN ON SAID PLAN; THENCE N. 07° 21' 43" E. ALONG
SAID PARADISE LANE A DISTANCE OF 173.00 FEET TO THE
POINT OF BEGINNING. CONTAINING AN AREA OF 2.7566
ACRES.

BEING THE SAME PROPERTY CONVEYED TO THOMAS R
BUTTON AND JEANNE M BUTTON BY QUIT CLAIM DEED OF
DONALD W. GARFIELD RECORDED 10/16/98 IN BOOK 20539,
PAGE 59, DOC. 152069.

Tax Id: 505-00457-140

xxx

ATTEST: WORC. Anthony J. Vigliotti, Register

"**B**"

**After Recording Return To:**
**Bank of America, N.A.**
**4500 Amon Carter Blvd**
**Fort Worth, TX 76155**

This document was prepared by Bank of America, N.A.

_____[Space Above This Line For Recording Data]_____

# Home Equity Modification Agreement

Borrower ("I")[1]: Jeanne M Button
Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note
("Note"): March 9, 2006
Loan Number: 874916872
Property Address (See Exhibit A for Legal Description if applicable) "Property": 140
Paradise Lane, Fiskdale, MA 01518

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage or Deed of Trust ("Mortgage") on the Property, and (2) the Note secured by the Mortgage (collectively the "Loan"). The Note, the Mortgage and all documents appending, amending and/or supplementing the Note or the Mortgage are together referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

I understand that I must sign and return one copy of this Agreement to the Lender on or before September 29, 2012. This Agreement will not take effect unless the conditions set forth in Section 2 have been satisfied.

_____

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.



874916872•USC•HE3S•34144

*(page 1 of 9 pages)*

1.  **My Representations.** I certify, represent to Lender and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in imminent danger of default and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B.  The Property has not been condemned and it is my principal residence;
    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;
    D.  I have provided documentation for <u>all</u> income that I receive;
    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for modification of my Loan, are true and correct;
    F.  I have made or will make all payments required under any Trial Period Plan or Loan Workout Plan.

2.  **Conditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  The Loan will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

    C.  I cannot make any alterations or changes to any term or provision of this Agreement without the written consent of the Lender.

3.  **The Modification.** If my representations in Section 1 continue to be true and correct and all conditions to the modification set forth in Section 2 have been met, the Loan Documents will become modified as provided in this Agreement as of October 23, 2012 (the "Modification Effective Date"). The first modified monthly payment will be due on October 23, 2012.

    A.  The New Maturity Date will be September 23, 2052.



6745148372•USC•HE39•54144

B. The principal balance of my modified Loan will: (1) <u>include</u> all amounts and arrearages that are accrued and unpaid, including unpaid and deferred interest, real estate taxes, insurance premiums, and other out-of-pocket costs and expenses incurred by Lender in performing its servicing obligations (collectively "Capitalized Amounts"); and (2) <u>exclude</u> unpaid late charges, insufficient fund fees and certain other home equity loan or line of credit-related fees. The Capitalized Amounts total $28,514.68. I understand that by agreeing to add the Capitalized Amounts to the outstanding principal balance of my modified Loan, the Capitalized Amounts shall accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid and deferred interest that is capitalized and added to the outstanding principal balance, which would not happen without this Agreement.

| Capitalized Amounts | |
|---|---|
| Unpaid and/or Deferred Interest | $28,499.68 |
| Real Estate Taxes | $0.00 |
| Insurance Premiums | $0.00 |
| Property Preservation or Inspection Costs | $15.00 |
| Foreclosure Expenses and Fees | $0.00 |
| Bankruptcy Expenses and Fees | $0.00 |
| Other Advances or Fees | $0.00 |
| | |
| Total | $28,514.68 |

Unpaid late charges and insufficient fund fees incurred prior to the Modification Effective Date will be waived. Fees for any Line Protection Plan, Borrowers Protection Plan, or other optional loan product(s) you may have purchased with your Loan will <u>not</u> be waived.

C. The new principal balance of my Loan shall be the sum of the existing principal balance of my Loan and the Capitalized Amounts less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Loan will be $228,593.57 (the "New Principal Balance").

D. The 3.750% interest rate will remain in effect until September 23, 2052. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 3.750% | September 23, 2012 | $920.15 | $0.00 | $920.15 | October 23, 2012 | 480 |

*Escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

If I have any optional products (which may include Line Protection Plan®, Borrowers Protection Plan®, and/or Credit Insurance), I understand that my monthly payments may be higher than the amounts shown above because they may include amounts for the premiums and/or fees for my optional products. The actual amount of my monthly payments will be shown on my payment coupons.

E.  If my monthly payments are automatically being deducted from a deposit account under PayPlan, I understand that for my payments to draw at the new amount under this Agreement, I must cancel my existing PayPlan agreement (if I have not already done so) and enter into new PayPlan arrangements, by calling Servicer at 1-866-709-1116. During the time my PayPlan arrangements are canceled, I understand I must make my monthly payments under this Agreement by sending a check for the amount of my payment to the following address:

Bank of America N.A.
P.O. Box 15222
Wilmington, DE 19886-5222

I understand that I may also make my payment by phone, by calling 1-866-709-1116 (for which there may be a fee).

I agree that if I make any payments for amounts included in the New Unpaid Principal Balance under this Modification Agreement, Servicer may apply those payments to the first payment due under this Modification Agreement on the Modification Effective Date, for amounts received during the month before the Modification Effective Date; or Servicer may apply those payments to reduce the Unpaid Principal Balance of my Loan.

*(page 4 of 9 pages)*

In addition, I agree that any remaining unapplied amounts may be applied to reduce the principal balance of my Loan. I understand that all payments due between the date Servicer sent this Modification Agreement to me and the Modification Effective Date are included in the New Unpaid Principal Balance.

F.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

4.   **Additional Agreements**.  I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

G.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

H.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures. I also agree to allow Lender to attach an Exhibit A to this Agreement which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

I.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

J.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.

K.  I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

In Witness Whereof, the Lender and I have executed this Agreement.

*Jeanne M Button*

Jeanne M Button

*9/23/12*

Date

87491887 USC+He3S+64+44

**DO NOT WRITE BELOW THIS LINE.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP
By: Urban Settlement Services, LLC, its attorney in fact

By:

Stephanie Casillas

Dated: DEC 1 0 2012

Name:

Title  :   Assistant Secretary

# TRUTH IN LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Bank of America, N.A.

BORROWER(S):  Jeanne M Button

DATE September 19, 2012
LOAN NO. 874916872

ADDRESS 140 Paradise Lane
CITY STATE / ZIP Fiskdale, MA 1518
PROPERTY 140 Paradise Lane, Fiskdale, MA 01518

| ANNUAL PERCENTAGE RATE<br>The cost of your credit<br>As a yearly rate | FINANCE CHARGE<br>The dollar amount the credit<br>Will cost you | AMOUNT FINANCED<br>The amount of credit provided<br>To you or on your behalf | TOTAL OF PAYMENTS<br>The amount you will have paid<br>after you have made all<br>payments as scheduled |
|---|---|---|---|
| 3.750% | $213,077.70 | $228,593.57 | $441,671.27 |

INTEREST RATE AND PAYMENT SUMMARY:

| | INTRODUCTORY<br>Rate & Monthly<br>Payment<br>(for first 480 months) | MAXIMUM during<br>FIRST FIVE YEARS<br>(10/23/2012) | MAXIMUM EVER (as<br>early<br>as 10/23/2012) | 1st Increase |
|---|---|---|---|---|
| Interest Rate | 3.750% | 3.750% | 3.750% | |
| Principal+Interest Payment | $920.15 | $920.15 | $920.15 | |
| Est. Taxes + Insurance Includes Private Mortgage Insurance | $0.00 | $0.00 | $0.00 | |
| Total Est. Monthly Payment | $920.15 | $920.15 | $920.15 | |

| |
|---|
| There is no guarantee that you will be able to refinance to lower your rate and payments. |
| **SECURITY:** You are giving a security interest in the property located at: 140 Paradise Lane, Fiskdale, MA 01518 |
| **ASSUMPTION:** Someone buying this property __X__ cannot assume the remaining balance due under original mortgage terms _____may assume, subject to lender's conditions, the remaining balance due under original mortgage terms. |
| **PROPERTY INSURANCE:** Hazard insurance, including flood insurance if the property is in a Special Flood Hazard Area, is required as a condition of this loan. You may obtain the insurance coverage from any insurance company acceptable to the lender. |
| **LATE CHARGES:** If your payment is more than 15 days late, you will be assessed a late charge of 3.00% of the unpaid portion of the regularly scheduled payment. |
| **PREPAYMENT:** If you pay off your loan early, you<br>_____may      __X__  will not be entitled to a refund of part of the finance charge.<br>_____may      __X__  will not have to pay a penalty. |
| See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties. |

"e" means an estimate
*The Amount of Payments does not include property taxes, property insurance, or other property assessments.
I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Jeanne M Butto___

Jeanne M Button

_9/23/12___
Date

Truth in Lending Disclosure Statement
2C298-US (04/09).02(d/i)

## DEFINITION OF TRUTH-IN-LENDING TERMS

ANNUAL PERCENTAGE RATE

The Annual Percentage Rate (APR) is the cost of credit expressed as a yearly rate. The APR is a measure of the total cost of credit, including interest, loan discount, origination fees, transaction charges, and premiums for credit-guarantee insurance; it is not an *interest* rate. The APR relates the amount and timing of value received by the borrower to the amount and timing of payments made by the borrower. The APR is designed to take into account all relevant factors and to provide a uniform measure for comparing the costs of similar credit transactions.

FINANCE CHARGE

The finance charge is the dollar amount the credit will cost you. It is the total amount of interest paid over the term of the loan, plus prepaid finance charges, defined below, plus the total amount of any required mortgage insurance charged during the term of the loan.

PREPAID FINANCE CHARGES

Prepaid finance charges are finance charges imposed in connection with the loan that are paid prior to or at loan closing or withheld from the loan proceeds at any time. These charges include, but are not limited to, points, discounts, origination, and processing fees, per diem interest paid at or before closing. In real estate secured transactions, some charges may be excluded from the calculation of prepaid finance charges; for example, amounts paid for title insurance, notary, credit report, appraisal, flood determination and pest inspection.

AMOUNT FINANCED

The amount financed is the amount of credit provided to you or on your behalf. The amount financed is calculated by taking the loan amount shown on the note and subtracting any prepaid finance charge. Thus, the amount financed is not necessarily equal to the loan amount. For example, if you must pay a separate 1% loan origination fee (a prepaid finance charge) on a $100,000 residential mortgage loan at closing, the loan amount is $100,000 but the amount financed is $99,000 ($100,000 minus the $1,000 loan origination fee).

TOTAL OF PAYMENTS

The total of payments is the amount you will have paid after you make all scheduled payments. It includes the total of all payments of principal, interest and mortgage insurance, if applicable. It does not include amounts paid prior to or at loan closing or withheld from the loan proceeds.

INTEREST RATE AND PAYMENT SUMMARY

The interest rate and payment summary contains certain summary information about interest rates and payments, and changes to rates and payment, if applicable, in a tabular format. The table reflects the contract interest rate at closing, together with the corresponding monthly payment, including, if applicable, escrows for taxes and property and/or mortgage insurance, and, if applicable (i) the maximum interest rate and payment at any time during the first five years after consummation, and (ii) the maximum interest rate and payment possible during the life of the loan.

ESTIMATES

Some of the disclosures may be marked with an "e," indicating that the amount is estimated because, at the time the disclosure is prepared, the creditor does not have all the information needed to make a more accurate disclosure. For example, the amount of prepaid interest may be estimated because the date of loan closing is not yet determined, or a third party charge by a closing agent or attorney may be pending verification. The creditor may be required to provide a final disclosure with more precise information no later than loan closing, if the estimated amounts change significantly. If the loan is a multiple-advance construction loan, the disclosures of the finance charge, annual percentage rate and total of payments are marked as estimates because the actual schedule of advances is not known at the time the disclosures are prepared.

"C"


**Bank of America**

PO Box 31785
Tampa, FL 33631-3785

**Customer service information**

Customer service: 1.800.669.6607

TDD/TTY users only: 1.800.300.6407

En Español: 1.800.295.0025

JEANNE M BUTTON
THOMAS R BUTTON
140 PARADISE LN
FISKDALE MA 01518-1026

| Account number | 874916872 |
|---|---|
| Payment due date | 11/23/16 |
| **Total amount due** | **$43,257.05** |

## Your Home Loan Account
Statement date: November 7, 2016

THIS STATEMENT IS BEING SENT FOR INFORMATIONAL AND/OR COMPLIANCE PURPOSES ONLY. IT SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT A DEBT, A DEMAND FOR PAYMENT OR AN ATTEMPT TO MODIFY ANY APPLICABLE BANKRUPTCY PLAN TERMS OR DISCHARGE INJUNCTION. IF YOU HAVE RECEIVED A DISCHARGE OF YOUR PERSONAL OBLIGATION TO REPAY THE DEBT ASSOCIATED WITH THE REFERENCED LOAN, Bank of America, N.A. WILL NOT TAKE ANY ACTION AGAINST YOU BUT HAS RETAINED THE RIGHT TO ENFORCE ITS RIGHTS AGAINST THE PROPERTY SECURING THIS LOAN.

### Account information

| | |
|---|---|
| Property address | 140 PARADISE LANE |
| Loan type | Conventional 2nd |
| Contractual remaining term | 39 Years, 09 Months |
| Interest paid to date | 01/19/13 |
| Principal balance | $228,563.72 |
| Interest rate | 3.750% |
| Prepayment penalty | No |

### Past payments breakdown

| | Paid since last statement | Paid year to date* |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Fees, charges, and advances | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

### Explanation of total amount due

| | |
|---|---|
| Projected principal* | $920.15 |
| Projected interest* | $0.00 |
| **Regular monthly payment** | **$920.15** |
| Current period fees and charges | $0.00 |
| Outstanding payments, fees, and charges | $42,336.90 |
| Unpaid Interest amount* | $0.00 |
| **Total amount due** | **$43,257.05** |

*Please see the "Other important information" section of the statement.

### Transaction activity (10/12/16 to 11/07/16)

No transaction activity for this statement period.

*[handwritten]* EARLIEST STATEMENT
NO STATEMENT BEFORE THIS ONE

## Additional contact information

**Housing counselor information:**  If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD).  For a list of homeownership counselors or counseling organizations in your area, go to hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 1.800.569.4287.

| General Inquiries | To mail a payment | Overnight mail | Insurance matters |
| --- | --- | --- | --- |
| PO Box 31785<br>Tampa, FL 33631-3785 | PO Box 15222<br>Wilmington, DE 19886-5222 | Retail Payment Services,<br>DE5-023-03-04<br>Christiana III<br>900 Samoset Drive<br>Newark, DE 19713-6002 | Insurance Dept.<br>PO Box 961291<br>Fort Worth, TX 76161-0291 |
|  | Payments can also be made by phone, online, or at any Bank of America financial center. | Accepts overnight mail only. In-person payments are not accepted at this address. |  |

Notice of Error, Requests for Information and Qualified Written Requests (as defined in RESPA) must be sent to:    PO Box 942019, Simi Valley, CA 93094-2019. You have certain rights under federal law to resolve errors and request information related to your account. For more information about these rights, you can go to bankofamerica.com or contact us.

## Payment processing information

Payments are considered to be received by Bank of America, N.A. received through the means or at the locations designated on the back of your remittance coupon, or at such other locations as may be designated by Bank of America, N.A. If your loan is not current, based on certain conditions such as bankruptcy or foreclosure, you may be unable to make a payment using one or more of the means or locations listed in the "You can make your payment" section. Payments received pursuant to a PhonePay will be processed in accordance with the PhonePay agreement. Payments received pursuant to a Bank of America Bill Pay, Transfer and Mortgage Pay on the Web options will be processed in accordance with the Bill Pay, Transfer and Mortgage Pay on the Web agreement. If you're mailing a payment and do not mail your remittance coupon with your payment or do not mail your payment to the designated payment location, it may cause delays in the processing of your payment. Payments, mailed with the remittance coupon to the designated location that  are received by 5 p.m. in the time zone of the designated payment location, will be credited to your account effective on that business day, unless otherwise specified on the remittance coupon provided. All payments mailed to  Bank of America, N.A. must be in the form of a check or money order, made payable to Bank of America, N.A. and must be drawn in United States dollars and payable by a United States financial institution or the United States Postal Service. Certified or other forms of payment may be required, if previously advised.

We may charge you a fee of up to $40 for any payment returned or rejected by your financial institution, according to your loan documents and applicable law. In addition, there may be fees for certain services related to the servicing of your loan. These fees are either listed on our website or will be quoted upon request. All fees are subject to change without prior notice.

## Other important information

TO THE EXTENT YOUR PERSONAL LIABILITY FOR THIS LOAN WAS DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY UNDER THE BANKRUPTCY CODE, THIS STATEMENT IS FOR COMPLIANCE AND/OR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE RECEIVED A DISCHARGE, YOU'RE NOT PERSONALLY LIABLE. THE ONLY RECOURSE IS AGAINST THE PROPERTY SECURING THE LOAN.  THIS STATEMENT IS NOT A DEMAND FOR PAYMENT. THE COUPON IS INCLUDED ONLY AS A CONVENIENCE FOR THOSE WHO ARE MAKING REGULAR MORTGAGE PAYMENTS, AND IS NOT INTENDED TO SOLICIT PAYMENT FROM THOSE WHO HAVE SURRENDERED THE PROPERTY.

Debt Collection Notice:  Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.

Cramdown: If the secured portion of your loan was reduced to the value of the property, known as "cramdown", in a bankruptcy reorganization case, this statement may reflect the terms of the order allowing the cramdown. If that order was contingent upon discharge and you do not receive a discharge of the underlying debt, the contractual terms of your loan will be reinstated and will be reflected in future statements.

Credit Reporting Notice: If permitted by applicable law, we may report information about your account to the credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

Paid year-to-date:  Balances in the "Past payments breakdown" section shouldn't be used for year-end tax reporting. Please use the information on IRS Form 1098, which will be provided during tax season, for reporting purposes. Balances for loans that have been service-transferred or have undergone modification may reflect activity that has occurred since the date of transfer or modification only.

Projected principal / interest:    Your loan accrues interest daily. Any scheduled payment received after the payment due date will result in an addition of accrued interest to your account. The amount of the additional interest is referred to as 'Unpaid Interest'.

Bank of America, N.A., Member FDIC.  Equal Housing Lender © 2016 Bank of America Corporation.

 **Bank of America**

*Your Home Loan Account*

| JEANNE M BUTTON | | Account 6872 | | November 7, 2016 | Page 3 of 4 |

THIS STATEMENT IS BEING SENT FOR INFORMATIONAL AND/OR COMPLIANCE PURPOSES ONLY. IT SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT A DEBT, A DEMAND FOR PAYMENT OR AN ATTEMPT TO MODIFY ANY APPLICABLE BANKRUPTCY PLAN TERMS OR DISCHARGE INJUNCTION. IF YOU HAVE RECEIVED A DISCHARGE OF YOUR PERSONAL OBLIGATION TO REPAY THE DEBT ASSOCIATED WITH THE REFERENCED LOAN, Bank of America, N.A. WILL NOT TAKE ANY ACTION AGAINST YOU BUT HAS RETAINED THE RIGHT TO ENFORCE ITS RIGHTS AGAINST THE PROPERTY SECURING THIS LOAN.

**Statement information:** The information contained in this statement is accurate as of the date of this statement but may not contain all information related to your loan. For the most up to date and complete information regarding your loan, please contact customer service.

**Unpaid Interest amount:** Your loan accrues interest every day. Any payment received after the payment due date will result in additional interest being added to your loan. The amount of the additional interest is referred to as 'Unpaid Interest'. Ensuring that your payment is received on or before the payment due date will keep this amount from increasing. The 'Unpaid Interest' total doesn't affect the amount of your monthly payment due, but it will increase the total amount due at the time you pay off your loan.

874916872300000092015000092015

BANK OF AMERICA, N.A.
PO BOX 15222
WILMINGTON, DE  19886-5222

| Account number: | 874916872 |

| **Amount due on 11/23/16** | **$920.15** |

JEANNE M BUTTON
THOMAS R BUTTON
Property address:
140 PARADISE LANE
FISKDALE, MA  01518

| **Additional principal** | $ | . |
| **Additional escrow** | $ | . |
| **Total enclosed** | $ | . |

⑆586990058⑈874916872⑈

 **You can make your payment:**

- By phone - call 1.800.669.6607
- At any Bank of America financial center
- By mail using the enclosed envelope

**For checks or money orders**
- Make your check payable to Bank of America, N.A.
- Please write your loan number on the check or money order.
- Include this payment coupon with your check (do not staple your check to the coupon).
- Please do not send cash or include correspondence.
- Use blue or black ink.

Bank of America, N.A., Member FDIC. ⌂ Equal Housing Lender ☺ 2016 Bank of America Corporation.

**A B**



## Mortgage - 6872

| Loan Summary | | Account Services | Payment Due | |
|---|---|---|---|---|
| Loan type: | Conventional 2nd | Online payment options | **Payment amount due:** | **$1,071.71** |
| Current rate: | 3.750% | Homeowners insurance | Next payment due: | 10/23/2017 |
| Current principal balance: | $264,274.19 | Property tax information | Late charge date: | 11/07/2017 |
| **More loan information ›** | | **More services ›** | Payment breakdown | as of 09/2017 |

| Make Payment |

**If your home has been damaged, we can help you recover.**

Need help with insurance claims? Find out how to submit a property claim>

## Transaction history    View Amortization Schedule Calculator

| Date/ Description | Payment Amt/ Opt. Prod. Amt. | Principal/ Balance | Interest/ Buydown | Escrow/ Balance | Late Charge/ Balance | Partial/ Balance |
|---|---|---|---|---|---|---|
| 09/29/2017 | $1,071.71 | $256.38 | $815.33 | $0.00 | $0.00 | $0.00 |
| 09/01 Payment | $0.00 | $264,274.19 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/31/2017 | $1,071.71 | $228.47 | $843.24 | $0.00 | $0.00 | $0.00 |
| 08/01 Payment | $0.00 | $264,530.57 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/31/2017 | $1,071.71 | $37.91 | $1,033.80 | $0.00 | $0.00 | $0.00 |
| 07/01 Payment | $0.00 | $264,759.04 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/26/2017 | -$1,065.00 | $0.00 | $0.00 | $0.00 | $0.00 | -$1,065.00 |
| 06/01 Misc posting | $0.00 | $264,796.95 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/21/2017 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/01 | $0.00 | $264,796.95 | $0.00 | $0.00 | $0.00 | $1,065.00 |
| 07/21/2017 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/01 Due date adjustment | $0.00 | $264,796.95 | $0.00 | $0.00 | $0.00 | $1,065.00 |
| 07/21/2017 | -$35,168.23 | -$35,168.23 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/01 Principal bal adj | $0.00 | $264,796.95 | $0.00 | $0.00 | $0.00 | $1,065.00 |
| 07/21/2017 | $0.00 | -$1,065.00 | $0.00 | $0.00 | $0.00 | $1,065.00 |
| 03/01 Misc posting | $0.00 | $229,628.72 | $0.00 | $0.00 | $0.00 | $1,065.00 |
| 06/21/2017 | $920.15 | $0.00 | $920.15 | $0.00 | $0.00 | $0.00 |
| 03/01 Payment | $0.00 | $228,563.72 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/26/2017 | $920.15 | $0.00 | $920.15 | $0.00 | $0.00 | $0.00 |
| 02/01 Payment | $0.00 | $228,563.72 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/24/2017 | $920.15 | $0.00 | $920.15 | $0.00 | $0.00 | $0.00 |
| 01/01 Payment | $0.00 | $228,563.72 | $0.00 | $0.00 | $0.00 | $0.00 |





Transaction history is displayed up to the past 18 months. If you require transaction history beyond 18 months, please visit our Message Center to place your request.

# "E"

Thomas R Button    Profile & Settings    Saved Items    **Sign Out**

## Online Banking

How can we help you?

Accounts | Bill Pay | Transfer | Send | Rewards & Deals | Tools & Investing | Open an Account | Help & Support

Bank of America Preferred Client

# Hello, Thomas  Update Profile | Security Center

Enrolled since Nov 2014
My summary

### Personal accounts*

| | |
|---|---|
| BofA Interest Checking - 7454 | |
| Quick View | |
| Rewards Savings - 3348 | |
| Quick View | |
| Mortgage - 6872 | $262,581.87 |
| Quick View | |

### Investment accounts

Exclusive cash bonus offer for Preferred Rewards clients.

Get up to $900 when you invest in a new Merrill Edge® account  >>

Open a new account

* For checking, savings, and money market accounts, the balance may reflect transactions that have not yet posted to your account. For credit card, Gold Option and Gold Reserve accounts, the balance may not reflect recent transactions or pending payments.

Last sign in on 10/11/2018 at 06:54 AM ET

**Secure Area**                                                                                  En Español | Sign Out

Locations | Contact Us | Browse with Specialist | Privacy & Security | Online Banking Service Agreement | Advertising Practices

Investment and insurance products:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |
|---|---|---|
| Are Not Deposits | Are Not Insured By Any Federal Government Agency | Are Not a Condition to Any Banking Service or Activity |

Banking, credit card, automobile loans, mortgage and home equity products are provided by Bank of America, N.A. and affiliated banks, Members FDIC and wholly owned subsidiaries of Bank of America Corporation. Credit and collateral are subject to approval. Terms and conditions apply. This is not a commitment to lend. Programs, rates, terms and conditions are subject to change without notice.

Investing in securities involves risks, and there is always the potential of losing money when you invest in securities. You should review any planned financial transactions that may have tax or legal implications with your personal tax or legal advisor.



Online Banking

Thomas R Button     Profile & Settings     Saved Items     **Sign Out**

How can we help you?

Accounts     Bill Pay     Transfer | Send     Rewards & Deals     Tools & Investing     Open an Account     Help & Support

## Message Center

## Messages

You have no messages.

## Mortgage Notifications

Read the notifications that we've sent to you about your mortgage account.

| Account | Description |
|---------|-------------|
| Mortgage – 6872 | Important Information for this account . |

Secure Area                                        En Español | Sign Out

Locations | Contact Us     Browse with Specialist | Privacy & Security | Online Banking Service Agreement | Advertising Practices

Investment and insurance products:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |
|---|---|---|
| Are Not Deposits | Are Not Insured By Any Federal Government Agency | Are Not a Condition to Any Banking Service or Activity |

Banking, credit card, automobile loans, mortgage and home equity products are provided by Bank of America, N.A. and affiliated banks, Members FDIC and wholly owned subsidiaries of Bank of America Corporation. Credit and collateral are subject to approval. Terms and conditions apply. This is not a commitment to lend. Programs, rates, terms and conditions are subject to change without notice.

Investing in securities involves risks, and there is always the potential of losing money when you invest in securities. You should review any planned financial transactions that may have tax or legal implications with your personal tax or legal advisor.

Merrill Lynch is the marketing name for Merrill Lynch and Merrill Edge® which are made available through Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S).

Merrill Lynch Wealth Management makes available products and services offered by MLPF&S and other subsidiaries of Bank of America Corporation. Merrill Edge is available through Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S) and consists of the Merrill Edge Advisory Center (investment guidance) and self-directed online investing.

Securities products are provided by MLPF&S, a registered broker-dealer, Member SIPC, and a wholly-owned subsidiary of Bank of America Corporation.

Insurance Products are offered through Merrill Lynch Life Agency Inc.(MLLA), Bank of America, N.A. and/or Bank of America Insurance Services, Inc., all of which are licensed insurance agencies and wholly-owned subsidiaries of Bank of America Corporation.

Bank of America, N.A. Member FDIC. Equal Housing Lender

©2018 Bank of America Corporation. All rights reserved.

3

Online Banking

Thomas R Button    Profile & Settings    Saved Items    **Sign Out**

*How can we help you?*

Accounts | Bill Pay | Transfer | Send | Rewards & Deals | Tools & Investing | Open an Account | Help & Support

## Message Center

**‹‹ Back to messages** : Mortgage notification details
Important Information for this account .

| Need to send a message? |
|---|
| Contact us online, by phone or in person |

What is this all About? We appreciate the opportunity to service this loan and we value our relationship with you. We are always looking for ways to increase customer satisfaction and to provide information. A number of our borrowers, probably just like you, have asked for more helpful information online as well as in their monthly statements. We want to clarify for you what we are doing, and why, to minimize your questions and concerns.

The Impact of the Bankruptcy:
Our records indicate that in the past you received a discharge of this debt in a bankruptcy case. Section 524 of the Bankruptcy Code tells us the discharge of this debt means you have no personal obligation to repay it. The discharge also protects you from any efforts by anyone to collect this discharged debt as a personal liability of the debtor. You cannot be pressured to repay this debt. On the other hand, the security agreement allows foreclosure if the requirements under the loan documents are not met. This quick summary is not intended as legal advice. You should consult with your own advisors if you have legal questions about your rights.

Online Information-What We Want to do For You: We received many calls from homeowners asking for detailed information about the home loan. We want to provide this information to those who want it. We are providing this detailed information as a courtesy to you. This is not an attempt to collect a debt that has been discharged. This is not a demand for payment. Account details displayed on this site are for informational purposes only. If your account is eligible, access to MortgagePay on the Web is provided as a courtesy to you.

Late Charge Information:
The loan documents provide that if we do not receive the current account payment by the end of the grace period specified, then the loan may be assessed a late charge, the amount is also specified in the loan documents. The specific details for your account can be found by selecting Account Details.

Secure Area                                                                En Español | Sign Out

Locations | Contact Us | Browse with Specialist | Privacy & Security | Online Banking Service Agreement | Advertising Practices

Investment and insurance products:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |
|---|---|---|
| Are Not Deposits | Are Not Insured By Any Federal Government Agency | Are Not a Condition to Any Banking Service or Activity |

Banking, credit card, automobile loans, mortgage and home equity products are provided by Bank of America, N.A. and affiliated banks, Members FDIC and wholly owned subsidiaries of Bank of America Corporation. Credit and collateral are subject to approval. Terms and conditions apply. This is not a commitment to lend. Programs, rates, terms and conditions are subject to change without notice.

Investing in securities involves risks, and there is always the potential of losing money when you invest in securities. You should review any planned financial transactions that may have tax or legal implications with your personal tax or legal advisor.



Dashboard   My Account   FAQs   Contact Us   Sign Out



Your Equifax® credit report is currently

# Unlocked

Lock Report

**Credit Report Alerts**   Equifax Credit Report   SSN Scanning   ID Theft Insurance

| ALERT TYPE | COMPANY | BUREAU | DATE |
|---|---|---|---|
| Updated tradeline | BANK OF AMERICA NA | TransUnion | Oct, 27, 2018 |
| Updated tradeline | BANK OF AMERICA, N.A. | Equifax | Oct, 27, 2018 |

| BUSINESS NAME/ADDRESS | BUSINESS TYPE | ACCOUNT TYPE/STATUS | BALANCE |
|---|---|---|---|
| BANK OF AMERICA, N.A.<br>450 AMERICAN ST<br>SIMI VALLEY, CA | N/A | Second mortgage | $USD 262581.0 |

| | | | |
|---|---|---|---|
| New tradeline | CHRYSLER CAPITAL | Experian | Sep, 29, 2018 |
| New tradeline | CHRYSLER CAPITAL | Equifax | Sep, 13, 2018 |
| New tradeline | CHRYSLER CAPITAL | TransUnion | Sep, 12, 2018 |
| Updated tradeline | BANK OF AMERICA | Equifax | Aug, 1, 2018 |
| Inquiry | NCCHARR CHRYSLER JEEP DO | TransUnion | Aug, 1, 2018 |
| Inquiry | CHRYSLER CAPITAL | Experian | Aug, 1, 2018 |
| Inquiry | NCCINCHARR CHRYSLER J | Experian | Aug, 1, 2018 |
| Inquiry | HARR MOTOR COMPANY | Equifax | Jul, 31, 2018 |

Credit monitoring from Experian and TransUnion will take several days to begin.

Locking your credit file with Equifax Credit Report Control will prevent access to your Equifax credit file by certain third parties, such as credit grantors or other companies and agencies. Credit Report Control will not prevent access to your credit file at any other credit reporting agency, and will not prevent access to your Equifax credit file by companies like Equifax Global Consumer Solutions which provide you with access

"G"

## MOUNTAIN, DEARBORN & WHITING LLP

### COUNSELORS AT LAW

**370 MAIN STREET**
**WORCESTER, MASSACHUSETTS 01608-1778**
**TELEPHONE 508-756-2423**
**FAX 508-755-6640**

RICHARD W. DEARBORN
HENRY W. BETH
JAMES D. O'BRIEN, JR.
FRANCIS J. RUSSELL
DALE R. HARGER
ANN K. MOLLOY
PATRICIA FINNEGAN GATES
PAUL C. FOLEY
ROBIN A. DE AUGUSTINIS
KATHERINE A. BAGDIS
NINA T. DOW

CHARLES B. SWARTWOOD, III
MARK W. BLOOM
OF COUNSEL

**Certified Article Number**

9414 7266 9904 2102 8153 10

**SENDER'S RECORD**

May 8, 2018

**VIA Certified Mail**
Bank of America NA
100 North Tryon Street
Charlotte, NC 28255

RE:  *Thomas R. Button*
*21 Circle Drive*
*N. Windham, CT 02656*
*Loan No.: 7023139319*

Dear Sir / Madam:

This is to advise you that I represent the above-named Thomas R. Button and this correspondence is being sent to you in accordance with M.G.L. c. 93A §9 based on the unfair and deceptive acts and practices which Bank of America ("the Bank") engaged in with regard to my client.

On March 4, 2006, Thomas R. Button ("Thomas") along with his then wife Jeanne M. Button ("Jeanne") executed a mortgage for a property they owned located at 140 Paradise Lane, Fiskdale, MA 01518.

A copy of that mortgage is attached hereto and marked as "A".

In 2009, Thomas and his wife divorced in the Commonwealth of Massachusetts and as part of their separation agreement, Thomas transferred his interest in the property referred to above to his wife Jeanne and she took over the responsibility of paying the mortgage to the Bank.

In 2011 a dispute arose between Jeanne and the Bank concerning the amount of payments that she had made to the Bank and whether they were to be applied prospectively or retroactively. During this dispute Jeanne, who had agreed as part of their divorce to be unilaterally responsible for making the mortgage payments to the Bank, was threatened with a foreclosure proceeding by one of its attorneys as a result of the payment discrepancy.

At the time of this dispute with the Bank, Thomas was informed by Jeanne that she had, in fact, prepaid a lump sum payment representing the mortgage obligation several months in

advance.  Apparently, the dispute was based on the Bank's claim that it was applying the payment to past due amounts.

Thomas had moved from the area and although he still maintained a Bank account with the Bank, he was never contacted by the Bank about this delinquency, as previously stated, until he received a telephone call from Jeanne indicating that she had sought relief from her financial problems by filing a petition in the Bankruptcy Court.

During the pendency of the Bankruptcy, Jeanne unilaterally negotiated a loan modification agreement with the Bank which changed the original note and mortgage terms.  A copy of said agreement is attached hereto and marked "B".

Thomas never agreed to participate or sign the modification agreement, was never contacted by the Bank regarding the loan modification agreement, and, according to Jeanne, she was told by the Bank employee with whom she was negotiating this agreement that Thomas' participation and/or signature were not necessary and the loan modification agreement could be accomplished without his involvement.

The modification agreement turned out to be not only without Thomas' permission but also resulted in a change in the original terms of the note and mortgage which Thomas had signed and resulted in an increase in the amount of principal and interest that was going to have to be paid going forward.

Thomas was also never informed by the Bank of these changes in the financial terms of the original loan.

Jeanne made the mortgage payments in accordance with the loan modification agreement of September 23, 2011 until 2015, when she was again in arrears with the terms and conditions of the original loan modification agreement and in mid-2016, the Bank posted these delinquencies with credit reporting services naming both Jeanne and Thomas as being delinquent thereby severely damaging his otherwise stellar credit rating.  Thomas only became aware that his credit rating had been seriously damaged when he sought to borrow funds to start a business or buy a house or car.

In 2017 Jeanne entered into a second loan modification with the Bank which again changed the terms of the original note and mortgage which Thomas had signed and significantly increased liability to the Bank and which appeared on his credit report.  A copy of the second loan modification agreement is attached hereto and marked "C".

Again, Thomas was never notified by the Bank of anything relating to this second loan modification.

The wrongdoing on the part of the Bank included but is not limited to the fact that it engaged in the following improper and illegal activities:

**BREACH OF CONTRACT**

1.    The Bank breached the terms and conditions of its contract obligations with Thomas as set forth in the original mortgage which provides that for any amendments to be effective, such as the loan modification agreement that was signed by his former wife "…they must be in writing and must be signed by whoever will be bound or obligated by the change or amendment."

At no time was Thomas ever asked by the Bank to sign any writing that would effectuate a change in the mortgage terms as required by this provision.

Furthermore, it is Thomas' position that by unilaterally entering into the first loan modification with Jeanne, the Bank based on its course of conduct, discharged Thomas from any contractual obligations he had with the Bank as a result of his execution of the original note and mortgage.

Consequently, it was improper for the Bank to subsequently provide any information to any credit reporting agencies as a result of Jeanne's breach of the first loan modification agreement which she signed and the obligation of which was improperly imputed to her former husband Thomas.  Such action was improper and an unfair and deceptive act and in violation of M.G.L. c. 93A.

**VIOLATION OF M.G.L. c. 140D §12(2)(A)**

2.    Bank of America was required in accordance with M.G.L. c. 140D §12(2)(A) to disclose the amount financed but failed to do so with regard to Thomas.

As a result of the loan modification agreement unilaterally signed by Jeanne, Thomas should not to be bound by its terms because he never agreed to participate in the agreement or was advised of the change in terms.

**VIOLATION OF M.G.L. c. 93 §64**

3.    Bank of America violated M.G.L. c. 93 §64, by negligently providing false information to the credit reporting agencies after Thomas' obligation had been terminated by the first loan modification agreement, thereby severely damaging Thomas' credit rating and significantly damaging his ability to borrow funds to purchase a car or to open a business which he had plans to do.

     As a result of the foregoing Thomas has been injured and has suffered severe financial damage as a result of not being fully informed of the financial transaction modifying his original mortgage obligation and thereby affecting his credit rating.

Specifically, as a result of the Bank's breach of its original agreement with Thomas, he was suffered and continues to suffer injury to his credit rating which has prohibited him from securing financing to purchase a business, a home, and motor vehicles.

These violations of M.G.L. c. 140D §12(2)(A) and M.G.L. c. 93 §64 have been declared unfair and deceptive and unlawful in accordance with M.G.L. c. 93A, of the Massachusetts General Laws and the Massachusetts Consumer and Business Protection Act.

Failure to respond to this 93A Demand letter within 30 days offering a reasonable settlement will compel the commencement of a lawsuit in accordance of §9 of said chapter 93A.

Thomas asserts that a reasonable offer of settlement for the losses suffered by my client to be $300,000.00.

If you fail to respond to this letter or if suit is filed against you and your conduct is found to be unfair and deceptive, Thomas could be awarded actual damages and you are subject to legal fees and double and triple damages if you refuse to grant relief pursuant to this demand letter and the Court determines that your refusal after review of this letter was made in bad faith with reason to know your conduct was unfair and deceptive and in violation of chapter 93A.

I look forward to hearing from you and your counsel in the near future.

Very truly yours,

James D. O'Brien, Jr.

JDO/tlw
cc:    Thomas R. Button





# KORDE & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

SERVING MASSACHUSETTS, NEW HAMPSHIRE, & RHODE ISLAND

VIA CERTIFIED MAIL RRR, FIRST CLASS MAIL AND FAX  508-755-6640

June 11, 2018

James D. O'Brien, Esq
Mountain, Dearborn & Whiting, LLP
370 Main Street
Worcester, MA 01609

9489 0090 0027 6017 6874 38

RE:    Property: 140 Paradise Lane, Sturbridge, Massachusetts
          Thomas R. Button
          Response to 93A demand Letter

Dear Attorney O'Brien:

This office is counsel to Bank of America, N.A. (hereinafter "BANA") with respect to your allegations relative to the above and as set forth in correspondence dated May 8, 2018.  Your letter purports to be sent under the provisions of Massachusetts General Laws, Chapter 93A, Section 9, the Consumer Protection Act. To the extent that your letter constitutes a proper demand under M.G.L. c. 93A, which BANA hereby denies, liability on the part of BANA is unequivocally denied.  Despite its defects, and notwithstanding the deficiencies as contained in your correspondence, kindly consider this as a response to same with reservation of all objections to the sufficiency of your correspondence under the statute and/or applicability of same to the subject transaction. Accordingly, the following is a response to the concerns raised in your letter.

The facts of this matter are as follows:

Your client, Thomas R. Button and Jeanne M. Button entered into a loan obligation with my client in March of 2006. Your client and Ms. Button had previously entered into a loan obligation with Southbridge Savings Bank that held a senior lien on the property at 140 Paradise Lane, Sturbridge, Massachusetts.  In 2009 your client and Ms. Button were divorced.

In 2012, Ms. Button filed a Chapter 13 petition in Case No.: 12-43990 in which your client was listed as a co-debtor on both loan obligations. Ms. Button filed a motion with the Court to approve a loan modification pertaining to the first mortgage with Southbridge Savings Bank.  Your client participated in and executed that loan modification.  Your correspondence suggests that Mr. Button neither assumed nor participated in any loan obligations as co-debtor following the divorce.  That assertion is patently false and is not supported by the records of the bankruptcy court as to his

900 CHELMSFORD STREET, SUITE 3102, LOWELL, MASSACHUSETTS 01851
PHONE: 978-256-1500 / FAX: 978-256-7615
HOURS OF OPERATION: 8:30AM – 5:30PM, EST MONDAY THRU FRIDAY

interactions with same.   Moreover, vaguely asserted claims that you purport to present by correspondence would be time-barred.

Your assertion that an unfair and deceptive practice arises as to my client from the actions of Ms. Button as it relates to the loan obligation with my client is absurd and legally untenable.  With respect to your correspondence and your stated or implied reference to a claim for damages, your demand fails to describe with any level of specificity how any such unstated damages may be derived in the context of the transactions that are the subject of your correspondence.  Accordingly, BANA denies the damage claim in its totality. Moreover, your correspondence fails to satisfy statutory requirements expressly provided for under Massachusetts law. As a prerequisite to bringing suit under c. 93A, the statute requires any potential plaintiff who is alleging a violation of § 9 of that chapter to have provided a *legally sufficient written demand for relief* to the potential defendant no less than thirty days before filing suit. Mass. Gen. Laws c. 93A, § 9(3), inserted by St.1969, c. 690, provides that "[a]t least thirty days prior to the filing of any [action under G.L. c. 93A, § 9], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."

Sending such a letter is a "condition precedent to commencing an action under G.L. c. 93A, § 9." *Spilios v. Cohen*, 38 Mass.App.Ct. 338, 342, 647 N.E.2d 1218 (1995). You have the burden to prove "the timely sending of a letter complying with the statutory specifications." See *Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 813, 333 N.E.2d 202 (1975) ("A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved"); *York v. Sullivan*, 369 Mass. 157, 163, 338 N.E.2d 341 (1975) (under c. 93A, § 9, "a written demand for relief, is a prerequisite to suit, to be alleged and proved"); *Kanamaru v. Holyoke Mut. Ins. Co.*, 72 Mass.App.Ct. 396, 407-408, 892 N.E.2d 759 (2008) (c. 93A, § 9, "requires a plaintiff to make a written demand letter asking for reasonable relief thirty days prior to filing a lawsuit.)

You have failed to list specific practices purported to be deceptive within the meaning of the statute or otherwise provide enough facts to make any claim that is plausible on its face that our client had engaged in unfair and deceptive business practices. You have alleged no facts to suggest that the true and accurate record of events in this matter present an error that rises to sufficient level for the claim as suggested or caused him actual harm as it pertains to our client. A Chapter 93A violation cannot be satisfied by such a low level of suggested error. See *Baena v. KPMG LLP*, 453 F.3d 1, 3 (1st

Cir. 2006). Based on the foregoing, it is denied that you have sent a proper or sufficient statutory demand or that your correspondence constitutes a statutory demand letter in that it fails to comply with the strict requirements of General Laws Chapter 93A.

Given that any such demand letter must reasonably inform a potential defendant of the factual basis for the alleged unfair or deceptive act or practice, and given that your correspondence does nothing other than provide an improper and erroneously-crafted recitation of history, the correspondence signed by you does not describe any conduct of our client that can reasonably be found to allege a violation of c. 93A. See, e.g. *Spilios v. Cohen*, 38 Mass. App. Ct. 338, 342 (1995).

In summary, you have failed to comply with the requirements of the Massachusetts statute and, in contravention of the express language of the statute, you have failed to assert actionable conduct under the statute. It is BANA's position that it has at all times acted appropriately, and therefore any acceptance of liability would be in appropriate. Notwithstanding the many deficiencies of your letter so as to fail as a valid c. 93A demand, this office nevertheless has responded to your correspondence and denies that BANA has engaged in any activities that could be deemed violations of MGL c. 93A.

Therefore, again, based on all of the foregoing, no offer of settlement would be necessary or appropriate. If your client intends to pursue this matter further, our office is prepared to defend our client's position vigorously and assert any claims that it may possess regarding this matter and will seek to recover any expenses it may incur in any resulting litigation.

Very Truly Yours,

Lawson Williams, Esq.

cc: Client

"**I**"

# MOUNTAIN, DEARBORN & WHITING LLP

## COUNSELORS AT LAW

370 MAIN STREET
WORCESTER, MASSACHUSETTS 01608-1778
TELEPHONE 508-756-2423
FAX 508-755-6640

RICHARD W. DEARBORN
HENRY W. BETH
JAMES D. O'BRIEN, JR.
FRANCIS J. RUSSELL
DALE R. HARGER
ANN K. MOLLOY
PATRICIA FINNEGAN GATES
PAUL C. FOLEY
ROBIN A. DE AUGUSTINIS
KATHERINE A. BAGDIS
NINA T. DOW

CHARLES B. SWARTWOOD, III
MARK W. BLOOM
OF COUNSEL

August 30, 2018

Lawson Williams, Esq.
Korder & Associates, PC
900 Chelmsford Street, Suite 3102
Lowell, MA 01851

RE:     *Thomas R. Button*
        *21 Circle Drive*
        *N. Windham, CT 02656*
        *Loan No.: 7023139319*
        ***SUPPLEMENTAL CLAIM FOR RELIEF PURSUANT to M.G.L. c. 93A***

Dear Attorney Williams:

I am in receipt of your letter of June 11, 2018 responding to my correspondence to your client Bank of America dated May 8, 2018.

I am submitting the following correspondence to you as a supplement to that original letter.

Notwithstanding the fact that I do not agree with your analysis of my original correspondence to your client, and in order to deal with any confusion you obviously have about the letter's mandatory content, I would like to remind you that in accordance with M.G.L. c. 93A §9(3) the content of the demand for relief must contain "… a written demand for relief identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injuries suffered…"

If you review the correspondence again, you will see that the first paragraph of my letter to your client of May 8, 2018 , which I incorporate by reference here and attach a copy for your convenience, sets forth the name of the claimant, and the second, third, and fourth pages of that letter provide a detailed description of the unfair and deceptive acts and practices engaged in by your client and finally the injury suffered by my client as a result of your clients conduct which and seriously affected his credit rating causing him significant financial hardship.

I would like to remind you that with regard to the claim for breach of contract, the former Mrs. Button unilaterally and without my client's consent, and with the actual complicity on the part of one of your client's employees, told Mrs. button that my client's consent to the loan

modification was not necessary despite the fact that she was specifically advised by Mrs. Button that my client did not agree nor would he sign the loan modification agreement, but your client's employees accepted the unilateral execution of the loan modification by Mrs. Button.

In accordance with Massachusetts law, one party to a contract, such as Mrs. Button, cannot unilaterally change the obligations of another, in this case my client, under a contract. *New England Mut. Life Ins. Co. v. Harvey 80, 2F Supp 702, 706 (D. Mass. 1949).*

Rather the parties must expressly or impliedly agree to the modification. *J. Leo Nash Steel Corp. v. Southern New England Steel Erection Co. Inc., 9 Mass. app Ct. 337, 383 – 384 (1980).*

There is no evidence whatsoever that my client in any way expressly or impliedly agreed to the modification. To the contrary, the exact opposite is the case, and was made known to your client's employee prior to the execution of the original loan my patient agreement.

In addition, based upon the facts articulated in my original letter, your client's conduct violates M.G.L. c. 140D §12(2) (A) which in accordance with M.G.L. c. 140D §34 "… constitutes a violation of M.G.L. c. 93A."

Also, with regard to M.G.L. c. 93A §34, by your client negligently provide false information to a credit reporting agency which was also in violation of M.G.L. c. 93A §68.

Finally, in order to be even more specific about my client's actual financial damages, Mr. Button secured services of an economist who prepared a report of the financial damage to my client as a result of the improper conduct on the part of Bank of America.

That report indicates that the net economic loss to my client in terms of his inability to purchase a home or acquire a business amounts to is $434,302.

Accordingly, in accordance with M. G. L. c. 93A my client is renewing his demand letter of May 8, 2018, requesting that a reasonable offer of settlement be forthcoming from your client within 30 days and if that does not occur, I will initiate a lawsuit in accordance with M. G. L. c. 90 3A §9.

As you are aware, your failure to respond to this letter or if suit is filed against your client and your client is found to be unfair and deceptive, my client could be awarded actual damages and your client is subject to legal fees and double or triple damages if your client refuses to grant relief pursuant to this demand letter and the court determines that your client's refusal after review of this letter was made in bad faith with reason to know and in violation of M. G. L. c. 93 a.

Again I look forward to hearing from you in the near future.

Very truly yours,

James D. O'Brien, Jr.

JDO/tlw
cc:    Thomas R. Button